Good morning. May it please the Court, Jonathan Libby, appearing on behalf of Appellant William Rudd. Your Honors, Mr. Rudd will be 70 years old when he begins supervised release. And when he begins supervised release, he's going to be subject to a condition of release that will make it very difficult, if not impossible, to find a place to live. It may result in his having to sleep on the streets, homeless, because he will not be allowed to live or reside within 2,000 feet of a long list of locations. Is there anything in the record specifically about the consequences of that for some, for Los Angeles, for example? There is not, Your Honor. Of course, the government had the burden of proof in the district court to establish the necessity of a condition, and the government put on no evidence. The probation officer — That's a different point. I mean, you're trying to — the necessity is one point, but you're arguing — I mean, what you're saying seems intuitively right. And, in fact, there's a Supreme Court case about billboards that says that 1,000 feet is most of the city of Oakland from similar places. But it would have been helpful to have an actual record. That's absolutely correct, Your Honor. It certainly would have been better. I'm not sure that anybody below gave it a whole lot of thought, and I'm not sure why that is. Perhaps people don't necessarily think 2,000 feet is a very long distance. In fact, it's close to half a mile. And when you take a half a mile from, you know, just schools, that blocks out a whole large area. And then when you add to that each of these additional locations, it makes it for a few bucks. I think the problematic — the problematic portion may be above the 2,000, which would be nice to have a record on that, given, you know, I mean, you look outside and there's parks and places where youth congregate everywhere. The other problem is this. It seems rather vague because it talks about 2,000 feet from a youth center. I'm not sure I know what a youth center is. And then it talks about — well, in video arcade facilities, that's like movie theaters. They put video — or it could be in a movie theater. It could be anywhere. Could be. And then other places primarily used by persons under the age of 18. Well, is that — what is that? Is that a soccer field in Southern California? It very well might be, and it's certainly not entirely clear. So that's — because I find that problematic. Also, I haven't seen this condition. It's just popped up recently, and I don't know what the source of this condition is. It seems like the judges are routinely including it now, you know, without making specific findings on why it's necessary and narrowly tailored. Well, that's right. And I speculated in the brief that perhaps it's based on California's Jessica's Law, and there seemed to be some correlation time-wise after Jessica's Law took effect that the probation office, certainly in the Central District of California — Was this in the recommendations in the probation report? In this case, it was recommended in the probation. Some of the others just came from the judge, apparently. No. In the Rudd case, it was in the probation report. The probation — in the plea agreement, there had been a long list of conditions that at least the defense thought had been agreed to. Not this one. It's in the appeal waiver provision of the plea agreement. It was something about being in view of some of these places. Right. Not all these places. Cannot reside within direct view of those same locations. The same locations? Yes. I see, including the youth center and all that stuff. Correct. So you don't have a quarrel with the direct view? And there was one other one. There's a direct view, and then there's something that's narrower. Well, there's one that says that you can't loiter within 100 feet of various locations. It's 100 feet, and then there's direct view. Can't reside within direct view. Correct. And we did not quibble. It essentially had been agreed to by the parties that he can't reside within direct view, and the defense, in fact, asked the court, rather than impose what probation had recommended, that it, in fact, imposed what the parties had discussed in the agreement that he not reside within direct view. The courts, without any explanation other than to say she saw that there were only minor variations between what defense had requested and what probation had recommended, decided just to go with what probation had recommended. Is there a plain error problem in this case? Was this objected to or not objected to? I don't believe there's a plain error problem because the defense specifically requested the direct view condition, and the court rejected that. And the fact that the court rejected what the defense requested, I think, is sufficient to preserve the issue.  Denial? Didn't the defense really not quibble? The judge said something along the lines of I don't really see any difference in the other conditions. She specified a couple of conditions that she talked about and then said I don't really see any difference in the others, one of which was the direct view versus the 2,000 feet, and nobody spoke up and said, oh, yeah, there is a difference. That's certainly true. In her tentative, in her written tentative ruling, she indicated that, you know, there are these two other conditions that were not, that she is going to impose and that there are only minor variations with respect to the others. The only other condition that there was any minor, that there was any variation, excuse me, from between what was in the plea agreement versus what was in the probation office letter was, in fact, this residency restriction. So she clearly was referring to that. You're correct. No one stepped up and said, no, it's not a minor variation. That's true. But the court was rejecting what the defense had requested. What about the idea that, or the argument that the, evaluating whether the condition is too broad and basically forces someone into a homeless situation, it's too early to tell, and that you should wait and see what effect the condition has, and it can always be modified? Well, I view that as essentially a ripeness argument, that it's, the issue is not yet right for this court to review, and of course this court has said on multiple occasions, you don't have to wait for someone to violate a condition in order to challenge it. You have the right to challenge the condition immediately after it's been imposed, as it has been in this case, and, you know, why should someone have to essentially suffer homelessness before he can go to the court and say, look, you forced me to be homeless now. Now can we please change that? I don't think a defendant should have to, in fact, go through that before. Would it make any difference if the condition had a probation officer override? It very well could make a difference. I mean, in this Court's Salas decision, it said even if the probation officer has the right to make an exception, there's no guarantee the probation officer will make an exception, but it certainly would make this a better condition, and it's not clear to me why the court would not, in fact, allow the defense of the What findings did Judge Stotler make to justify this condition? None, Your Honor. There was nothing in the record from Judge Stotler. Or if one looks traditionally to the probation, the present report of the probation office recommendation letter for an explanation, there's nothing in there. All that's in the probation officer recommendation letter is that, you know, that this is a reasonable condition for sex offenses, just generically with respect to all of the conditions. But would it make sense or would you argue for an evidentiary hearing in one of the we have three cases with this issue in it, in one or more of these cases, as to the actual impact of these recommendations on I mean, one problem with having that is that theoretically it could be different places, and who quite knows where these people would want to live, but I suppose you could start with the places they came from. And I would not have a problem if the court felt more comfortable remanding this for an evidentiary hearing to take more evidence on the issue, though we still have a situation where when you look at the condition, does it make sense? We have, you know, the recent California Sex Offender Supervision Monitoring Task Force report that came out in October, you know, which the task force has police chiefs and probation officers, and it looked at the California residency restriction, the 2,000-foot residency restriction. It said, you know, it doesn't work, and in fact, rather than improving public safety, it in fact compromises the effect of monitoring supervision of sex offender police, and recommended that in fact California rescind Jessica's law, because in fact does the opposite of what the condition was intended to do. Because when they're homeless, you can't find them. Exactly, exactly. And they're supposed to register, right? Wouldn't he have the registration requirement, too? He would, though obviously that becomes somewhat difficult when one is homeless, but yes, there is certainly that registration requirement. But also, you know, what various courts have said, and we submitted a 20-J letter with various state Supreme Court decisions dealing with this type of condition, you know, the individual is subject to constant eviction. They can't ever be settled anywhere, because there's no guarantee that one of these, you know, parks or youth center or something might open up within 2,000 feet after they've already set up a residence, which would then automatically put them in violation and they'd have to move. And this is not something that would seem to make a whole lot of sense. If this were sent back to the trial judge, what guidance would you give the trial judge as to a condition of this type, something about living near children, or would you just say figure it out based on evidence to be presented, or would you say it's illegal to have it? We've not suggested that it's impermissible to ever impose a residency restriction. And as I said, we in fact in this case affirmatively recommended the restriction that he not live within direct view. So we're not objecting to residency restrictions per se, but we do have a problem when you're dealing with one that potentially can result in homelessness. And what guidance would you give the judge as to what is an appropriate residency restriction? Well, I think as Judge Berzon suggested, perhaps you give greater trust in the probation officer to make up with this 2,000 feet condition. Well, you know, it's not clear again why the probation officer came up with this or how it came up with or whether the particular probation officer in this case was following office policy and may in fact have not been in favor of it. We don't know. Are these cases all from the central district? Yes, Your Honor. So maybe it's the central district probation office that's routinely putting these in sex offenders' cases. That is certainly my experience in the office. And even when the offense isn't a sex offender case, but the defendant has maybe a long time in the past committed a sex offense. Correct, which we'll be getting to shortly. Yes. I see I'm over time unless the court has a different case. We'll hear from the government on this. Thank you. Good morning. Jean-Claude Andre on behalf of the United States. Mr. Libby has given the court 24 pages of very compelling and thorough and scholarly briefing and 10 minutes of persuasive argument, all of which might have persuaded Judge Stotler in this case to exercise her discretion not to impose this condition or to impose some variant of it with a narrower geographic limitation. But it was not presented to Judge Stotler. And I think we absolutely, in response to your question to Mr. Libby earlier, Judge Berzon, we absolutely have a plain error problem in this case. Here's the wrinkle on this problem. There was a plea agreement, right? There was. And in the plea agreement, your office agreed to the two conditions that were much more narrowly, two residency conditions much more narrowly tailored, the direct view and the 100 feet. And I assume your office was just fine with the ones you agreed to. You didn't ask the probation office to recommend this 2,000 feet one, right? That's correct. That just came out of the blue from the probation office, right? I have my suspicions. But, yes, I don't know why it appeared in the probation officer's writing, but it did. Yeah. We've all worked with probation offices. So sometimes things, policy things, just change. So what the defendant's sentencing memorandum said, we're content with the residency requirements that were in the plea agreement. And I don't know if you had a sentencing memorandum, too, but obviously I think you were content. And then the court imposes this. Well, was there any warning she was going to impose this? Yes, absolutely. There was notice that she was going to impose this? Absolutely. And I guess she did it in addition to the other two, right? Well, she preserved the 100-foot loitering restriction, and then she tweaked the residency restriction to substitute within 2,000 feet for within line of view or line of sight. Okay. Judge Stotler indicated in her written tentative that she gave to the parties. And when was that? Pardon me? When did they get the written tentative? A lot of the judges do it the same morning. Is that what it was? I don't know, Your Honor. Well, that certainly makes a difference. Do you have the written tentative? Because isn't there, if there's a novel condition, I mean, a condition that departs from the standard probation conditions, isn't there some notice requirement, like 45 days? I know I've done recent sentencings, and I've asked all the defendants to waive the notice requirement because almost every sentencing I was doing, there was conditions that were not standard that suddenly were just there. And so I would either ask them to waive it or not impose it. There's a 35-day notice requirement for the PSR. Basically, the defendant has to be given PSR 35 days before sentencing or waive that 35-day period. With respect to supervised release conditions, however, and this Court's recent decision in Quinzone explains this, the defendant receives sufficient notice so long as it is at the outset of the hearing. And that comes from the Wise case from about a decade earlier, so. Okay. It's sufficient notice for technical notice purposes. Yes. But whether it's sufficient notice to override, to require essentially an additional objection when he's already said what it is he wants is a different question. Perhaps if I could unpack it. Maybe it would be useful, although we're going to have several other arguments, if we discuss the merits of this as well. Sure. If I could really quickly just, I guess, go through the quick history of how this came about and put that issue to bed in this case because it is unique to this case. So the condition was first altered by the Probation Office in its initial recommendation letter, and that was in April of 2010. That was a full month and a half. That goes to the judge, right? It was disclosed in this case to the parties. The recommendation letter. The recommendation letter was disclosed. Judge Stotler authorizes that. So the parties did have notice that probation was contemplating a condition different from what was in the plea agreement. And this is why I think we do have very much a plain error problem in this case. Yes, defense counsel stated a preference for the condition in the plea agreement, but he actually said, and this is on page 85 of the excerpts, for simplicity's sake, we prefer the conditions in the plea agreement. Not that there was a legal problem with what probation was recommending when it changed the condition. But the overall standard is that it has to be a sentence that's sufficient but not greater than necessary, et cetera, right? Correct. So there's a standard. And what I'm saying is even if it's plain error, we still have to deal with it. And we have to deal with it in terms of an existing standard. And so why don't we just deal with it? I mean, is your position that unless there's a court of appeals case saying that a 2,000 feet is no good, that therefore it can't be plain error? That is our position under Prompt 2. But that's wrong, right? It's wrong under our case law. Because our case law says the government's been in several cases in this calendar has made that argument. But our case law is quite clear about the fact that it can be plain error even if not announced until the court of appeals. Your Honor, I must, I guess, respectfully, also strongly disagree, and that's why I did a frappe for me. You may disagree, but we have case law that's contrary. In my letter of Monday night, we cited six cases. I saw your cases, but there are cases directly to the contrary. I'm not sure there are cases actually holding to the contrary. I know there are cases that have done to the contrary. And so I think that when the court has actually been confronted with the argument that we have to deal with it. But even so, I mean, the question is, there's still a statute, and you still have to comply with it. So I don't understand why it is that you need a case about 2,000 feet as opposed to a standard about which has to be applied. And the question is, how did what you do comply with the basic standard? We like Prong, too, because it's an easy way to affirm if the court's inclined to affirm. But I understand your point. I think in this case when you need to address, you have less than four minutes left in it. I think you need to address the concerns that have been raised on the merits of this condition, because in particular, it just seems very vague to me. I mean, I don't know if it's really telling the defendant where he can actually live or if there's any place where he can live. I would certainly agree that the condition is broad. And as far as how restrictive it is with respect to where a supervisee can reside, it's broader than California's law. But the problem, the vagueness problem, is that the supervisee isn't on adequate notice of whether he's going to be in violation of this condition or not. And there's substantial penalties if you violate conditions of supervised release. That's where the very next condition that Judge Stotler imposed, and I believe all the judges imposed in these three cases, the very next condition is important. The probation officer also must approve where the supervisee resides. And so that's relevant in two respects. One, the notice would ostensibly come from the discussion with the probation officer. I think I can live here. I think it complies with the condition. If the probation officer says fine, then how can the person be violated? Where do you live? I live in Beverlywood. Okay. Well, I live in Pasadena. I live in San Marino, but Pasadena, too. I don't know where someone could live that wouldn't be 2,000 feet from the scene. I agree. In urban areas, the condition does become more problematic. That's why the chief of police in Los Angeles, you know, said he thought it was problematic. But in this case, we know that the defendant wants to reside in New Mexico. And so I think unless the defendant's planning on living in the middle of Albuquerque, this may be much ado about nothing. And so when you analyze this condition in light of cases like Quinzone and Watson. How do you know he wants to live in New Mexico? Is that in the record? It is in the record. The defendant specifically requested that he be released by the GOP in New Mexico. Regardless of where he was incarcerated, he wanted to be released in New Mexico. Are you aware of the Supreme Court case of Laurel R. Tabacco? You're probably not, but it's about billboards where there was a condition that it be within 1,000 feet of schools or playgrounds, just schools or playgrounds. And the Supreme Court said that in some geographical areas, these And then they said that this is unduly broad and violates the First Amendment. And the standard's not that dissimilar from sufficient but not quite as necessary. So why wouldn't we look at this case without even any more evidence and say it's just too broad? I think because, again, unless the defendant's planning on living in Albuquerque, there's tons of places. Well, there's a facial challenge and an as-applied challenge. And this seems to be a facial challenge. Right. Well, and I don't think that the court can really, I don't think this is susceptible to a facial challenge because of the speculative nature of how this may all play out. But even if the court is going to engage in that facial challenge, then I think you have to give the district court a little extra benefit of the doubt that this was, in light of the 3582E and 32.1 modification procedures, this is a baseline. And if the defendant can't work out with his probation officer where he can live when he's released in some part of New Mexico, then the defendant has a remedy with the district court. And if the district court says, sorry, no, thank you, I'm not going to approve that, then the defendant would have a remedy with this court or the Tenth Circuit if jurisdiction is transferred out there after his release. It's mandatory, though. Shall not is mandatory. It's not you can live within 2,000 feet if the probation officer says it's okay. That's not what this says. No. You're right, Judge Wardlaw, although this Court does also have a tradition of construing even mandatory conditions for his release in light of either immediately proceeding or immediately subsequent conditions, reading them together. In fact, that's what this Court did in Quinzone with respect to what appeared to be a mandatory computer modification. Are you suggesting we should read this as having as being not mandatory but subject to the prosecution, the probation officer's determination? To sum up, because I see I'm over time, my bottom line would be I prefer affirmance across the board, but my second preference would be a construction like what the Court did in Quinzone and like what the Court's done in Soltero involving game conditions, and I believe we've got it. I mean, this Court regularly does that. I don't see any basis, though, given the lack of an objection and the lack of a request for an evidentiary hearing for this to go back to district court. But I hear what you're saying is, aside from these technical arguments, that there's a real problem. I think it's fairly debatable, and I think it should be tested and developed organically when there's an objection and the parties, you know, present their evidence and if the judge thinks that the written studies are insufficient, have an evidentiary hearing, but I don't think it should be in a case where there's no objection and where, moreover, the potential harm is speculative. But, you know, if you have the right case where the defendant says, you know, I was arrested in L.A., I want to be released, I'm going to go back to L.A. when I get out, and I think this restriction keeps me from living in L.A., then the parties can make their record for the district court.  Thank you, Your Honors. Could I just address one point from the last case with respect to my client wanting to live in New Mexico? All right. He made that request, but the court rejected that request. Therefore, Mr. Rudd, in fact, is going to have to live in the Central District of California unless he's subsequently transferred to New Mexico, but he made the request and the court rejected that. That's on page 27 of the excerpt. All right. Thank you.
judges: Whyte, Wardlaw, Berzon